**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3424-15T3

THE HISTORIC COTSWOLD
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff-Respondent,

v.

COTSWOLD, LLC,

    Defendant-Appellant,

and

UNION CENTER NATIONAL BANK,
FRANCES P. DILLER and WILFRED
DILLER,

    Defendants.

_____

Argued September 20, 2017 — Decided October 17, 2017

Before Judges Fuentes, Koblitz and Suter

On appeal from Superior Court of New Jersey,
Chancery Division, Bergen County, Docket No.
C-000106-15.

Luke J. Kealy argued the cause for appellant
(Greenbaum, Rowe, Smith and Davis, LLP,
attorneys; John D. North, of counsel and on
the brief; Mr. Kealy, on the brief).

Sanford F. Young argued the cause for respondent.

PER CURIAM

Defendant Cotswold, LLC (Cotswald) appeals from a February 11, 2016 order granting summary judgment to plaintiff The Historic Cotswold Condominium Association, Inc. (Association) in its dispute over the right to assign and control parking spaces at The Historic Cotswold, A Condominium, a complex in the Borough of Tenafly. We affirm substantially for the reasons set forth in the sixteen-page written opinion of Judge Menelaos W. Toskos.

The procedures for establishing and governing a condominium development are set forth in the New Jersey Condominium Act (the Act). See Siddons v. Cook, 382 N.J. Super. 1, 6-7 (App. Div. 2005) (citing N.J.S.A. 46:8B-1 to -38). A condominium is established by the recording of a master deed. N.J.S.A. 46:8B-8. It is governed by an association, which acts through a board of directors, whose composition is composed of members of the condominium's sponsor or developer and individual unit owners in accordance with the Act. N.J.S.A. 46:8B-12.

The Cotswold Condominium contains thirteen residential units and nineteen parking spaces, six of which are indoor garage spaces and thirteen of which are outdoor spaces. Under the condominium's 2005 master deed, the parking spaces are common elements, meaning that they are available for the use of all unit owners. The master

deed further provides that the parking spaces may be designated as limited common elements, reserved for the benefit of a particular unit owner, through the designation of the space in the unit deed transferring ownership to the unit owner. Cotswold made numerous such assignments in the course of selling the available units. Several of the unit owners obtained one or two parking spaces as a limited common element. Other unit owners did not obtain a parking space.

While the master deed is silent as to who may designate a parking space as a limited common element appurtenant to a particular unit, the association's by-laws provide that the Association's board may "establish and enforce Rules and Regulations for parking by and the assignment of parking spaces to Unit Owners, subject to the provisions of the Master Deed, Certificate of Incorporation and these By-Laws[.]" Upon the sale of the tenth of thirteen available units in May 2007, control of the board statutorily passed to the Association, as unit owners now held "at least seventy-five percent of the available units." See N.J.S.A. 46:8B-12.1

Cotswold continued to assign parking spaces through a deed subsequent to control of the board changing hands. Seven years later, in 2014, after two further conveyances that included parking spaces as limited common elements, the board sought to utilize its

authority under the by-laws to regulate parking at the condominium by charging rent for those spaces not used exclusively by any unit. Three unsold units and eight unassigned parking spaces remained. Months later, in January 2015, Cotswold deeded the three remaining unsold units to itself, assigning the remaining eight parking spaces as limited common elements to those three units. The Association then filed an action to quiet title, challenging the January 2015 conveyances made by Cotswold to itself.

After the parties filed competing cross-motions for summary judgment, agreeing to the lack of factual issues, Judge Toskos granted summary judgment in favor of the Association. He concluded that while Cotswold retained the right to sell unsold units pursuant to the master deed, that right did not encompass the right to assign and designate parking spaces as limited common elements, because, pursuant to the by-laws, Cotswold retained no interest in the condominium's common elements, which belong proportionately and indivisibly to the unit owners. The Association, comprised of unit owners, owned the condominium's common elements including the parking spaces. The by-laws grant the Association's board the power to assign and control the condominium's parking spaces.

Judge Toskos concluded that the governing documents, consisting of the master deed and by-laws, read together, "vest the [b]oard with authority to control the actions of the [c]ondominium," including the power to "establish and enforce [r]ules and [r]egulations for parking by and the assignment of parking spaces to [u]nit [o]wners." The judge noted that because the Association did not elect to utilize this authority until 2014, the only conveyances at issue were the January 2015 conveyances made by Cotswold to itself.

We review the trial court's decision de novo. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320 (2010) (citing Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995)). In reviewing the trial court's granting of summary judgment, we apply the same standard used by the trial judge. Ibid. We must consider, when viewing the facts in a light most favorable to Cotswold, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

While the Association did not explicitly raise the issue of Cotswold's self-dealing, the self-dealing nature of the transactions is readily apparent. In conveying the unit deeds to

itself with specific parking spaces listed as limited common elements appurtenant to the unit, it is clear that Cotswold's sole purpose in conveying the unit deeds to itself was to assert control over the remaining unassigned parking spaces. As Judge Toskos concluded based on a review of the master deed and by-laws, that control appropriately rested with the Association, via the board, once control of the board passed to the Association in 2007.

The parties represented that they tried but were unable to resolve this issue through mediation. Given the likelihood of further disagreements, we hope the parties will make every effort in the future not to resort to the expense and delay inherent in litigation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION